IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | Case No. CR11-2025 |
| vs. | | REPORT AND RECOMMENDATION |
| LAWRENCE JOHNSON, | | |
| Defendant. | | |

## TABLE OF CONTENTS

I.    *INTRODUCTION* ........................................ 2

II.   *PROCEDURAL HISTORY* ................................ 2

III.  *ISSUES PRESENTED* .................................. 2

IV.   *RELEVANT FACTS* .................................... 3

V.    *DISCUSSION* ........................................ 5
      A.   *Was the Search Warrant Supported by Probable Cause?* ......... 5
      B.   *Did the Application Contain Material Falsehoods,*
           *or Omit Material Information?* ........................ 9
           1.   *Alleged Falsehood:  Membership in an Ongoing Drug*
                *Conspiracy* ................................ 10
           2.   *Alleged Omission:  No Interception of Defendant on*
                *Wiretaps* 11 ................................
           3.   *Alleged Falsehood:  Defendant Occupying 407 Cutler and*
                *Selling Heroin* ............................. 12
           4.   *Alleged Omission:  Charges Pending Against the CS* ...... 13
           5.   *Alleged Omission:  CS's Introduction to Unknown Heroin*
                *Seller* .................................. 15
           6.   *Alleged Falsehood:  Location of January 20 Drug*
                *Transaction* ............................... 16
           7.   *Alleged Falsehood:  Allegation that Documents Could be*
                *Found* ................................... 17

       8.     *Alleged Falsehood: Reference to "Large-Scale" Drug Dealers* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

         *Summary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

   **C.** **Did the Officers Execute the Search Warrant in Good Faith?** . . . . . . 19

**VI. RECOMMENDATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

On the 31st day of August 2011, this matter came on for hearing on the Motion to Suppress (docket number 106) filed by Defendant Lawrence Johnson on August 17, 2011. The Government was represented by Assistant United States Attorney Patrick J. Reinert. The Defendant appeared in court and was represented by his attorney, Webb L. Wassmer.

## II. PROCEDURAL HISTORY

On April 19, 2011, Defendant was charged by Indictment with conspiracy to distribute heroin, distribution of heroin, possession with intent to distribute heroin, use or possession of a firearm during a drug crime, and being a felon in possession of a firearm. At the initial appearance and arraignment on April 21, Defendant entered a plea of not guilty, and trial was scheduled for June 20, 2011. On a motion for a continuance of the trial filed by a co-defendant, and over Defendant's objection, the trial was rescheduled for October 17, 2011.

On August 17, 2011, Defendant timely filed the instant motion to suppress. On August 25, 2011, the Government timely filed its Resistance (docket number 115) to the motion. Defendant filed a reply on September 1 (after the hearing). The Government responded to the reply on the same date.

## III. ISSUES PRESENTED

Defendant requests that the Court suppress all evidence obtained from the search of his residence at 407 Cutler in Waterloo, Iowa, including statements allegedly made by Defendant at that time. Defendant asserts that the application and supporting affidavit did not establish probable cause for the issuance of a search warrant. Alternatively, Defendant

argues that if material falsehoods contained in the application are omitted, and material omissions are considered, then the application, as modified, would not support a finding of probable cause. The Government argues that the search warrant was supported by probable cause, the affidavit did not contain any material false statements, no material information was omitted, and, in any event, the officers acted in good faith in executing the warrant.

## IV. RELEVANT FACTS

On February 14, 2011, Officer Bryan Furman of the Cedar Rapids Police Department, who is currently assigned to the DEA Drug Task Force, presented the undersigned magistrate judge with an application for a search warrant for the Cutler Street residence.[1] I issued a search warrant for the property, and the warrant was executed the next day.

The application and search warrant refer specifically to 407 Cutler Street in Waterloo. The supporting affidavit, however, referred to sixteen properties to be searched (including four trailers).[2] The affidavit describes an investigation into drug trafficking activities in Waterloo. The specific allegations referring to the Cutler Street property are set forth on pages 73-79 of the 89-page affidavit. The affidavit also incorporates by reference affidavits previously submitted to Chief Judge Linda R. Reade in support of Title III telephone intercepts.[3]

Task Force Officer Furman asserts in his affidavit that the Cutler Street address was believed to be occupied by Defendant Lawrence Johnson, "a known heroin supplier in the Waterloo, Iowa area." To support his belief, Furman set forth the following facts:

---

[1] Copies of the application for a search warrant (including the attachments and supporting affidavit), together with the search warrant and the return, were introduced as Government's Exhibit 1.

[2] I also issued separate search warrants for each of the other properties.

[3] Copies of the Title III affidavits were introduced at the hearing as Government's Exhibit 3. There are seven affidavits which, as supplemented, consist of nearly 500 pages.

1.     On January 12, 2011, a confidential source ("CS") made a controlled purchase of ten foils (two grams) of heroin, using $220 of authorized funds. After being searched, the CS picked up Jonathan Virgil at his home. The CS and Virgil then proceeded to Cutler Street, parking across from the residence at 407 Cutler. Virgil then called Defendant (as confirmed by phone records), advising him that "they were outside and ready to make the deal." Surveillance officers saw Defendant come out of the residence and enter the vehicle, sitting behind the CS. The CS paid Defendant $200 and received ten foils of heroin.[4] Defendant then exited the vehicle and returned to the residence at 407 Cutler Street. The CS then returned Virgil to his home on Argyle Street.

2.     On January 20, 2011, Defendant apparently made another sale of heroin. In a telephone conversation on that date, intercepted by a Title III warrant, Terris Sallis told Arthur Scott that "I be down to Bobby's in five minutes."[5] Task Force Officer Furman spotted a gray Jaguar registered to Karen Sallis, Terris Sallis' wife, being driven by Bobby Cage. Scott told Sallis that "I ain't doing nothing right now," which authorities interpret as meaning that Scott was unable to provide Sallis with heroin. Sallis then drove to Virgil's residence on Argyle Street. Virgil entered Sallis' vehicle and they proceeded to 407 Cutler Street. Task force officers watched as Defendant exited the residence at 407 Cutler and enter Sallis' vehicle on the passenger side. After less than one minute, Defendant exited the vehicle and reentered the residence at 407 Cutler Street. Sallis and Virgil then returned to 114 Argyle Street, where Virgil exited the vehicle and entered the residence. Because of the similarity to the January 12 transaction with the CS, authorities believed that Defendant had provided Sallis with heroin, with Virgil assisting.

---

[4] At one point, the affidavit states that the purchase price was $220, while in another location the affidavit states that the purchase price was $200. *Compare* ¶ 8(K)(2) on page 74 with ¶ 8(K)(2)(E) on page 75 (docket number 119 at 84-85).

[5] Sallis' and Scott's involvement in drug trafficking is described extensively elsewhere in the affidavit.

3.     After Sallis left Virgil's residence, Waterloo police officers performed a traffic stop on Sallis. No heroin was found, but Sallis had three pink tablets in his possession, which he identified as OxyContin. During an interview with task force officers, Sallis said that he did not purchase heroin on that date, but that he watched as Virgil purchased five foils of heroin for $100. According to Sallis, he wanted Virgil to test the heroin and make sure it was good quality, before Sallis would then return to 407 Cutler to make a purchase. The traffic stop occurred before Sallis was able to return.

## V. DISCUSSION

Defendant argues that the search warrant for 407 Cutler Street was not supported by probable cause. Alternatively, Defendant argues that the affidavit contained material falsehoods and omitted material information. With those modifications, according to Defendant, probable cause is lacking. The Government disputes Defendant's claims and argues alternatively that the officers executed the search warrant in good faith.

### A. Was the Search Warrant Supported by Probable Cause?

The Court turns first to Defendant's argument that "[e]ven if the Affidavit does not contain material falsehoods or omissions, probable cause was lacking." The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will

> be found in a particular place,'" probable cause to issue the
> warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

No oral testimony was presented to me when the search warrant was issued in this case. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827. Because they are included by reference, the affidavits submitted in support of the Title III telephone intercepts may also be used in determining the existence of probable cause.

The affidavits reflect extensive drug trafficking in Waterloo. While Defendant was not intercepted in any of the wiretaps, the search warrant affidavit supports a finding that Defendant was working with Jonathan Virgil to distribute heroin. On January 12, 2011, Defendant sold heroin to a confidential source in a controlled buy. Applying a "practical, common-sense" reading to the affidavit, it may also be concluded that Defendant sold heroin to Virgil on January 20, with an intent to sell heroin at a later time to Terris Sallis. The search warrant affidavit describes Sallis' involvement in drug trafficking in the Waterloo area in some detail.

In arguing that the affidavit does not support a finding of probable cause, Defendant first turns to the drug transaction on January 12, 2011. In his brief, Defendant asserts that the allegation that Defendant sold drugs on that date "is wholly dependent upon the word of Mr. Simmons [believed to be the CS] that a transaction involving Mr. Johnson occurred."[6] Defendant further argues that "[t]here is nothing in the Affidavit stating how Lawrence Johnson was identified as the purported seller."[7] I believe that Defendant's assertions are not supported by the record. First, the affidavit clearly establishes that a controlled purchase of heroin occurred on January 12, 2011. As set forth in the search warrant affidavit, task force officers searched the CS, and then watched as the CS picked up Virgil and drove to 407 Cutler Street. Upon arrival at the Cutler Street address, Virgil placed a call to a phone subscribed to Defendant Lawrence Johnson, indicating they were outside and ready to make a deal. A few minutes later, a person exited 407 Cutler and walked to the CS's vehicle. Officers watched as the person entered the CS's vehicle. Ten foils of heroin were then purchased with $200 of "official authorized funds." Officers then saw the person exit the vehicle and enter the residence at 407 Cutler Street. Since the phone was registered to Defendant, and applying a practical, common-sense approach, it is "probable" that Defendant was the person involved in the January 12 drug transaction.

It should be noted, however, that a search warrant may issue upon a finding that there is probable cause to search a specific *place*. *Gates*, 462 U.S. at 238. That is, the issue is whether, based on the totality of the circumstances, the search warrant application established "a fair probability" that contraband or evidence of a crime could be found at 407 Cutler Street. *Id.* That determination is not dependent on whether the person coming from the residence on January 12 and January 20 was Defendant, or someone else. The affidavit does not contain any additional information regarding Defendant, which purports

---

[6] *See* Defendant's Brief (docket number 106-1) at 13.

[7] *Id.*

to bolster the probable cause determination. Here, the affidavit established that a person (believed to be Defendant) exited 407 Cutler Street on January 12, 2011 to conduct a drug transaction in front of the house, and then returned to the house. The evidence also established that a second drug transaction likely occurred in the same manner on January 20, 2011. Even if Defendant could not be positively identified at that time, the connection between 407 Cutler Street and the sale of heroin remains the same.[8]

Defendant also argues that the January 12 and January 20 transactions were "stale" when the application for a search warrant was submitted on February 14, citing *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) ("probable cause must exist when a warrant issued, not merely at some earlier time"). Defendant concedes, however, that the passage of time is less significant where "continuing criminal activity is suspected." *Id.* In *Formaro*, the fact that the last controlled buy was made two and one-half weeks before the application did not render the information stale. *Id.* The Court noted that "in investigations of ongoing narcotics operations, 'intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale.'" *Id.* (quoting *United States v. Ortiz*, 143 F.3d 728, 732-33 (2d Cir. 1998)). *See also United States v. Smith*, 266 F.3d 902, 904 (8th Cir. 2001) (rejecting the defendant's argument that the warrant was not supported by probable cause "because the information in the affidavit regarding drug transactions at the house was approximately three months old"). Here, a controlled drug transaction occurred in front of the house 33 days prior to the application, with a second apparent drug transaction occurring 25 days prior to the application. The totality of the circumstances described in the affidavits

---

[8] While the information is not contained in the affidavit, Defendant was positively identified at the January 20 transaction. At the time of hearing, Task Force Officer Furman testified that they positively identified Defendant by first checking the phone records of Jonathan Virgil. The phone call made just before the drug transaction on January 12 was to a phone registered to Defendant. After getting Defendant's name, officers reviewed Defendant's driver's license photo and confirmed that it was the person they had seen sell heroin on January 12. When officers were surveilling the scene on January 20, they saw him again and confirmed that it was Lawrence Johnson. These details were not, however, included in the affidavit.

demonstrates that this was a widespread and ongoing drug trafficking operation. While no drug transactions had been observed in front of 407 Cutler during the three weeks prior to the search warrant application, I believe probable cause nonetheless existed to believe that drugs or evidence of criminal activity could be found at that location. Task Force Officer Furman asserted in the affidavit that narcotics traffickers commonly maintain records, notes, and other documents pertaining to the distribution of controlled substances, and it is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence.

In claiming that no probable cause existed for the issuance of a search warrant, Defendant notes that no witness saw any contraband or other evidence of drug transactions inside 407 Cutler. Such evidence, while obviously valuable, is not required. The issuance of a search warrant is based on probabilities. That is, using a practical, common-sense approach, the Court must determine whether there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. This determination should not be made grudgingly or in a hypertechnical manner. *Grant*, 490 F.3d at 632. Here, the affidavit established that on likely two occasions during the month prior to the warrant application, a person (believed to be Defendant) came out of the residence at 407 Cutler Street, entered a waiting vehicle, and sold heroin. I believe that a prudent person could conclude that there was a fair probability that drugs or other evidence of drug trafficking would be found inside the residence.

### B. Did the Application Contain Material Falsehoods, or Omit Material Information?

Next, Defendant asserts in his motion to suppress that the search warrant application "contains several material falsehoods, made with reckless disregard for the truth, as well as omitting material information." Defendant argues that "[w]ithout the material falsehoods and considering the omitted information, probable cause to issue the search warrant was lacking." In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court held that

if a defendant establishes by a preponderance of the evidence that a sworn statement used by police to procure a search warrant contained perjury or reckless disregard for the truth, then the court must determine whether the affidavit's remaining content is sufficient to establish probable cause. If not, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156. *Franks* also applies to material that has been "deliberately or recklessly omitted from a search-warrant affidavit." *United States v. Scott*, 610 F.3d 1009, 1013 (8th Cir. 2010).

Here, Defendant claims that the affidavit contains five false statements and three material omissions. The Court will address the allegations in the order contained in Defendant's brief.

### 1. Alleged Falsehood: Membership in an Ongoing Drug Conspiracy

In the affidavit submitted in support of the search warrant application, Task Force Officer Furman states:

> I believe that the individuals mentioned in this affidavit are members of an ongoing drug conspiracy who have historical participation in drug trafficking activities and are currently involved in this drug distribution conspiracy.

*See* Affidavit of Bryan J. Furman dated February 14, 2011, ¶ 6 at 5 (docket number 119 at 15). Defendant claims that the statement is false, at least as it pertains to him.

The search warrant application, and the Article III affidavits incorporated by reference, describe wide-ranging drug trafficking activities, including countless drug transactions. The confidential source, referred to in the warrant application, and Terris Sallis played an active role in that conspiracy. As set forth above, it is probable that Defendant sold heroin to both the CS and Sallis. While Defendant may not have played a prominent role in the conspiracy, Defendant has not proved that the statement is false, or that it was made "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155.

Moreover, even if Defendant had established his allegation of perjury or reckless disregard for the truth, the allegation is not material to the establishment of probable cause to search 407 Cutler Street. As set forth above, probable cause to search the residence was established by task force officers twice observing a person coming from the residence to sell heroin. Task Force Officer Furman's broad allegation that "the individuals mentioned in this affidavit" are members of a drug conspiracy, need not be considered in determining probable cause. That is, even if the allegation were removed from the affidavit, probable cause would nonetheless exist.

### 2. Alleged Omission: No Interception of Defendant on Wiretaps

Next, Defendant complains that the search warrant affidavit failed to inform the Court that Defendant was not intercepted on any of the Title III wiretaps. Defendant argues that this lack of communication with other persons named in the conspiracy "is strong evidence that Mr. Johnson was not a member of any conspiracy."[9] The Government concedes that Defendant was not intercepted on the Title III wiretaps, but argues that this fact is not material, nor has Defendant shown that its omission was intentional or reckless.

To prevail on this issue, Defendant must first prove that the fact he was not intercepted on the Title III wiretaps was "deliberately or recklessly omitted" from the affidavit. *Scott*, 610 F.3d at 1013. An intentional omission occurs when an officer "deliberately omit[s] vital information necessary to the magistrate judge's determination of probable cause." *United States v. Jacobs*, 986 F.2d 1231, 1233 (8th Cir. 1993). Defendant offered no evidence that Task Force Officer Furman intentionally or deliberately omitted the fact that Defendant was not intercepted on the Title III wiretaps.

The Court then turns to the question of whether information regarding the fact that Defendant was not intercepted on the Title III wiretaps was "recklessly omitted" from the search warrant affidavit. It may be inferred that an officer recklessly omitted information

---

[9] *See* Defendant's Brief (docket number 106-1) at 6.

from an affidavit if "the omitted material would be 'clearly critical' to the finding of probable cause." *Id.* at 1235 (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)). For the reasons discussed above, the fact that Defendant was not intercepted on the Title III wiretaps was not "clearly critical" to the finding of probable cause. Defendant has failed to prove that the omission was made deliberately or recklessly. Therefore, Defendant has not proved a *Franks* violation.

Even if the affidavit had informed the Court that Defendant had not been intercepted in any of the Title III wiretaps, it would not change the determination of probable cause. Probable cause to search 407 Cutler Street was established by officers observing a person exit that residence on two occasions to sell heroin, and then return to the residence. The fact that Defendant was not intercepted on the Title III wiretaps does not defeat probable cause.

### 3. *Alleged Falsehood: Defendant Occupying 407 Cutler and Selling Heroin*

The search warrant affidavit states that 407 Cutler Street was "[b]elieved to be occupied by Lawrence JOHNSON, a known heroin supplier in the Waterloo, Iowa area."[10] In his brief, Defendant asserts that the affidavit contains no information as to why Furman believed that Defendant was an occupant at 407 Cutler, "as opposed to a casual visitor." Defendant further asserts that the affidavit contains no information "as to how Lawrence Johnson was identified as a participant in either of the two transactions."

First, the Court notes that Defendant has offered no evidence that the allegation contained in the affidavit is false. That is, Defendant did not call a witness or produce other evidence which rebuts Furman's assertion that the property was "occupied" by Defendant. Furthermore, Defendant's claim that the affidavit contains no information regarding how Defendant was identified is simply not true. The Affidavit states that when the CS and Virgil arrived at the residence on January 12, Virgil called Defendant's phone

---

[10] *See* Affidavit of Bryan J. Furman dated February 14, 2011, ¶ 8(K) at 73 (docket number 119 at 83).

and indicated that they were outside and ready to make a deal. A person exited the house a few minutes later and the transaction was completed.

As noted, Defendant has failed to establish that the allegations contained in the affidavit were false. Even if 407 Cutler was not "occupied" by Defendant, however, Defendant's claim fails for two additional reasons. First, there is no evidence that Task Force Officer Furman deliberately made a false statement, or made the statement in reckless disregard for the truth. Defendant was seen exiting 407 Cutler on two occasions in order to sell heroin. It was not unreasonable for Furman to assume that Defendant lived there. At most, Furman was negligent in failing to conduct a further investigation regarding where Defendant was residing. However, "negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood." *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. at 171). *See also United States v. Finley*, 612 F.3d 998, 1008 (8th Cir. 2010) ("Omission of those details may be a product of negligence, but only a reckless or deliberate falsehood violates *Franks*."). Second, even if the allegedly false statement – that 407 Cutler was "occupied" by Defendant – were omitted from the affidavit, it does not defeat a finding of probable cause. Here, probable cause to search 407 Cutler was established by the connection between the *place* to be searched and the drug transactions, not by any specific connection to the *person*.

### 4.    *Alleged Omission:  Charges Pending Against the CS*

Next, Defendant asserts that the search warrant affidavit does not inform the Court that Lucious Simmons, believed to be the confidential source, was arrested in Tennessee in November 2010 and had charges pending against him. The Government claims that the information was included in the affidavits. In the Title III affidavit signed by Special Agent Mark McHugh on December 10, 2010, the Court is advised that "[o]n November 9, 2010, SIMMONS was arrested for a felony drug offense in Memphis, Tennessee, and has been in custody since that date. He was federally indicted on the drug charge on

November 15, 2010."[11] In a supplemental affidavit signed by Task Force Officer Kelly Meggers on February 8, 2011, the Court is advised that Simmons agreed to cooperate with the investigation following his release at a bond hearing on December 10, 2010.[12] In Meggers' supplemental affidavit, Simmons is referred to as "CS2." In the search warrant affidavit, the CS is identified as DEA CS-11-137274. In a footnote, the affidavit advises the Court that the CS "became a cooperating individual upon signing a proffer agreement on December 7, 2010."[13]

Defendant notes that the affidavits do not explicitly indicate that Lucious Simmons, who was CS2 in the Title III affidavits, is the same person as CS-11-13724, who is the confidential source in the search warrant affidavit. The Government argues that this fact can be inferred by a careful reading of the affidavits.

The Court was clearly advised that Lucious Simmons was charged with a felony drug offense in Tennessee in November 2010. The Court was also advised that Simmons gave a proffer interview on December 8 and 9, 2010, and agreed to cooperate with the investigation following his release on December 10, 2010. The search warrant affidavit reflects that the confidential source "became a cooperating individual upon signing a proffer agreement on December 7, 2010." Accordingly, it is not clear that the Court was advised that the CS in the search warrant affidavit had federal criminal drug charges pending against him in Tennessee. The Court was advised, however, that he had signed a proffer agreement before becoming a cooperating individual.

The Court concludes that even if it was not fully disclosed that the CS who purchased heroin from Defendant on January 12, 2011 had a felony drug offense pending,

---

[11] *See* Affidavit of Mark McHugh dated December 10, 2010, ¶ 10(A) at 8 (docket number 120 at 152).

[12] *See* Supplemental Affidavit of Kelly Meggers dated February 8, 2011, ¶ 4 at 2 (docket number 120 at 71).

[13] *See* Affidavit of Bryan J. Furman dated February 14, 2011, ¶ 8(B)(1) n.2 at 28 (docket number 119 at 38).

the omission was not material. That is, even it had been included in the affidavit, it would not have defeated a finding of probable cause. *Jacobs*, 986 F.2d at 1233. The only information provided by the CS regarding the search of 407 Cutler Street relates to the January 12 purchase of heroin. Significantly, this was a controlled transaction which was set up and monitored by task force officers. To the extent that it is necessary to rely on allegations by the CS in establishing that a drug transaction occurred, the CS's version of the events is corroborated by the officers' own observations. Similarly, as set forth above, officers did not rely on the CS to identify Defendant. In short, even if the Court had been told explicitly in the search warrant affidavit that the CS had drug charges pending against him in Tennessee, it does not change the observations made by the task force officers on January 12, 2011. In other words, consideration of the CS's criminal charges does not diminish the establishment of probable cause to search 407 Cutler.

### 5.    *Alleged Omission: CS's Introduction to Unknown Heroin Seller*

Defendant's next claim is a puzzlement to the Court. In his brief, Defendant cites the following passage from the search warrant affidavit:

> During this meeting the CS told agents VIRGIL contacted the CS and wanted to make an introduction to the source unknown to the CS, Lawrence JOHNSON. During earlier conversations with VIRGIL, VIRGIL told the CS that VIRGIL wanted to introduce the CS to the unknown subject selling heroin within the BALL DTO.

*See* Affidavit of Bryan J. Furman dated February 14, 2011, ¶ 8(K)(2)(A) at 74 (docket number 119 at 84).

In his brief, Defendant's argument regarding this reference consists of two sentences:

> The failure to inform the Court of the charges against Mr. Simmons and his cooperation for the purpose of reducing his own sentence is particularly relevant to this allegation. The sole source of this information is Mr. Simmons.

*See* Defendant's Brief (docket number 106-1) at 9. It is unclear whether Defendant is claiming that the allegations are false, or that there is a material omission associated with the allegations.

Defendant offers no evidence that the allegations are false. That is, the quoted section of the affidavit states that Virgil told the CS that he wanted to introduce the CS to a person selling heroin within the Ball drug trafficking organization. It asserts further that the CS then told the task force officers of Virgil's desire to make the introduction. Defendant offers no evidence that these statements are false.

Instead, Defendant appears to suggest that the absence of information regarding the CS's cooperation "for the purpose of reducing his own sentence" is a material omission. To the extent Defendant is making this argument, it is substantially the same as that set forth in Part 4 above, and fails for the same reason.

### 6. *Alleged Falsehood: Location of January 20 Drug Transaction*

The search warrant affidavit describes in some detail the events of January 20, 2011. Terris Sallis was followed by surveillance units to Jonathan Virgil's home at 114 Argyle Street in Waterloo. Virgil entered Sallis' vehicle and they drove to 407 Cutler Street, followed by surveillance. After arriving at 407 Cutler, task force officers watched as Defendant exited the residence, enter Sallis' vehicle, and then return to the house after less than one minute. Following the incident, Sallis was stopped in a traffic stop and subsequently interviewed by task force officers.

In her report of the incident (introduced at the hearing as Defendant's Exhibit E), Task Force Officer Meggers indicates that "SALLIS stated he picked up VIRGIL and they went to the intersection of Conger and Parker." Sallis then described the transaction observed by the task force officers. It is apparently undisputed that the "intersection of

i

Conger and Parker" is not near 407 Cutler Street.[14] While his brief is not explicit, Defendant apparently argues that this demonstrates the affidavit was false.

The fact that Sallis gave a different location to task force officers while being interviewed does not prove that the information contained in the search warrant affidavit was false. As the Government notes, Task Force Officer Meggers does not state in her report that the transaction occurred at the intersection of Conger and Parker. Rather, she simply reports that Sallis stated the transaction occurred at that location. In his search warrant affidavit, Task Force Officer Furman represented under oath that he and Meggers watched Defendant exit the residence at 407 Cutler and walk to Sallis' vehicle parked in the street. It should be recalled that Sallis did not know Defendant and was directed to the location by Virgil. It is likely that Sallis simply erred in recalling the location. In any event, Defendant has not proved that Furman perjured himself in submitting the search warrant affidavit.[15]

### 7. Alleged Falsehood: Allegation that Documents Could be Found

In the next-to-last paragraph of the 89-page search warrant affidavit, Task Force Officer Furman asserts that he believes that there are "documents, ledgers, books, photographs, receipts, and U.S. currency at the target locations which will reflect and document the magnitude of the BALL DTO."[16] Defendant asserts that there is nothing in the affidavit which supports that allegation.

In response, the Government points to paragraph 4 of the affidavit. There, Task Force Officer Furman asserts, based on his training and experience, that "narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders,

---

[14] At the instant hearing, Task Force Officer Bryan Furman testified that Conger and Parker do not intersect.

[15] Furman testified at the instant hearing that the transaction occurred at 407 Cutler.

[16] *See* Affidavit of Bryan J. Furman dated February 14, 2011, ¶ 14 at 89 (docket number 119 at 99).

and other papers relating to the transportation, ordering, sale and distribution of controlled substances."[17]  Furman alleges that it is common for large-scale drug dealers to "secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence."[18]  The affidavit further claims that persons involved in drug trafficking conceal in their residences drugs, currency, bank records, addresses and telephone numbers of "their associates in the trafficking organization," photographs, and other incriminating evidence.[19]

The Court concludes that Defendant has failed to prove that the allegation is false, or that probable cause would be defeated if it were deleted from the affidavit.  Task Force Officer Furman's allegation that documents or other evidence of a crime may be found in the residence of a drug trafficker is hardly surprising.

### 8.    Alleged Falsehood: Reference to "Large-Scale" Drug Dealers

Finally, Defendant objects to references to "large-scale" drug dealers, noting that there is no evidence that Defendant sold drugs on a large scale.  The search warrant affidavit and Title III affidavits provide ample evidence of a large scale drug trafficking organization operating in Waterloo.  As set forth above, the affidavits support a finding that Defendant played a role in the sale of heroin.  Even if the term "large-scale" is not properly assigned to Defendant, however, it does not affect a finding of probable cause. That is, the facts remain that a person exited 407 Cutler on two occasions, sold heroin, and then retreated to the same residence.  Applying a practical, common-sense approach, those are facts upon which a reasonable person could conclude that there was a "fair probability" that drugs or other evidence of a crime could be found at that location.  *Gates*, 462 U.S. at 238; *Grant*, 490 F.3d at 631.

---

[17] *Id.*, ¶ 4(e) at 3 (docket number 119 at 13).

[18] *Id.*, ¶ 4(f) at 3 (docket number 119 at 13).

[19] *Id.*, ¶¶ 4(g-l) at 4 (docket number 119 at 14).

*Summary*

To prevail on his *Franks* claim, Defendant must first prove that Task Force Officer Furman "knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant." *United States v. Cowling*, _____ F.3d _____. 2011 WL 3426232 (8th Cir. Aug. 8, 2011). Defendant has not met his burden of proving that Furman intentionally or recklessly included false statements, or omitted material information. A successful *Franks* challenge must also prove that "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *Id.* at *2 (quoting *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010)). As set forth above, even if the Court disregards all of those allegations which Defendant claims are false, and considers all of the omitted information identified by Defendant, a practical, common-sense reading of the modified affidavit would nonetheless establish a fair probability that drugs or other evidence of criminal activity could be found at 407 Cutler Street. Accordingly, *Franks* affords Defendant no relief.

### C. Did the Officers Execute the Search Warrant in Good Faith?

As set forth above, I believe that the search warrant issued on February 14, 2011, was supported by probable cause. Accordingly, it is unnecessary to consider the Government's alternative argument: that because the officers relied in good faith on the warrant when executing the search, the evidence should not be suppressed. Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The Constitution does not expressly prohibit the introduction of evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*,

414 U.S. 338, 348 (1974)). The Court noted in *Leon* that it "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. After reviewing the purposes of the exclusionary rule, the Court concluded that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" would not be suppressed. *Id.* at 922. An officer's reliance on a search warrant is not "objectively reasonable," however, if one of four circumstances is present:

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923).

Defendant claims that the first, third, and fourth circumstances described above preclude a finding that the officers' reliance on the search warrant was objectively reasonable. Defendant argues that the first exception does not apply for the same reasons set forth in his *Franks* argument. That is, the Government cannot rely on *Leon* if the affidavit included "a false statement made knowingly and intentionally or with reckless disregard for its truth." *See Jacobs*, 986 F.2d at 1235 ("[U]nder *Leon*, a *Franks* violation is not excused."). As discussed above, however, the Court finds that the affidavit did not contain false statements "made knowingly and intentionally or with reckless disregard for its truth." Accordingly, this exception does not apply.

Another circumstance which precludes a finding that the officers' reliance on the search warrant was objectively reasonable is when the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." In *Ross*, the Court noted that "'entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." 487 F.3d at 1122-23 (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)). For the reasons set forth above, I believe that the affidavit established probable cause to search 407 Cutler Street. Even if the district court finds that probable cause was lacking, however, it was not "so lacking" that the officers' reliance on the search warrant was "entirely unreasonable." *See also United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) ("Ordinarily, a police officer cannot be expected to question a judge's probable cause determination.").

In his post-hearing reply brief, Defendant argues that there was no probable cause to authorize the execution of the warrant at night, citing the recent case of *United States v. Kelley*, _____ F.3d _____, 2011 WL 3802801 (8th Cir. Aug. 30, 2011). There, the Court noted that "we have little doubt that in some circumstances an officer's night-time entry into a home might be unreasonable under the Fourth Amendment." *Id.* at *2. Specifically, if the officer has an intent to execute the search at night, "it is unreasonable under the Fourth Amendment not to disclose that intent to the issuing magistrate and to seek express authorization for the night-time search." *Id.* The Court found no violation in *Kelley*, however, because the officer sought and received permission to conduct a night-time search. Similarly, the search warrant here authorized a search "at any time in the day or night as I find reasonable cause has been established."[20] The search in this case was tied to multiple searches conducted in response to wide-spread drug trafficking activity. The affidavits provide ample cause to authorize a simultaneous night-time search for the

---

[20] *See* Search Warrant (docket number 119 at 1).

safety of the officers and occupants of the properties, and to preserve evidence. In any event, the Court in *Kelley* noted that "this constitutional issue has received surprisingly little attention in numerous night-time search decisions." *Id.* Even *if* the application and affidavit lacked specific allegations supporting a night-time search, the Court believes that the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

Finally, Defendant apparently relies on the fourth circumstance which states that an officer's reliance on a search warrant is not "objectively reasonable" if the warrant is "so facially deficient" that the officer could not reasonably presume the warrant to be valid. In his reply brief, however, Defendant does not point to any facial deficiencies in the warrant. Rather, his argument appears to circle back to the claim that there was no probable cause for the issuance of a night-time search. The Court has previously rejected that argument.

In summary, even if the search warrant is now found to be lacking in probable cause, the officers' reliance on the search warrant was objectively reasonable. Accordingly, the evidence obtained pursuant to the warrant will not be suppressed. *Leon*, 468 U.S. at 922. None of the circumstances prohibiting a finding of objective reasonableness are applicable here. The officers executing the search had an "objectively reasonable reliance" on the validity of the warrant and, even if the warrant is now determined to be lacking, the evidence should not be suppressed. *Id.*

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion to Suppress (docket number 106) filed by Defendant Lawrence Johnson on August 17, 2011, be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any *party* may serve and file written objections with the district court. ***The parties are reminded***

*that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 31, 2011.*

DATED this 12ᵗʰ day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA